# Exhibit A

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

SUPERIOR COURT DEPARTMENT
ESSEX DIVISION
CIVIL NO.  1777CV01182

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Diane Gokas                                           *
                                                              *
       Plaintiff                          *
v.                                                            *           **AMENDED COMPLAINT**
                                                              *
Beverly Bank, a/k/a/                                 *
North Shore Bank                                     *
                                                              *
       Defendant                         *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PARTIES

1. The Plaintiff, Diane Gokas, is a resident of Essex County, Massachusetts.

2. The Defendant, Beverly Bank, f/k/a/ Beverly Cooperative Bank, is a Massachusetts Co-
   Operative Bank with a principal address of 254 Cabot Street, Beverly, Massachusetts.

3. The Defendant, Beverly Bank, merged with North Shore Bank, on or about October 1,
   2019.

## FACTS

4. The Plaintiff, Diane Gokas (Hereinafter "Ms. Gokas"), is a former employee of Beverly
   Bank (Hereinafter "Beverly Bank" or "The Bank"), who recently completed eleven (11)
   years of service, and who has over twenty-six (26) years of experience in management at
   retail banks.

5. Ms. Gokas previously held the position of Branch Manager / Officer at the Lafayette
   Street branch for Beverly Bank located at 73 Lafayette Street, Salem, Massachusetts
   (Hereinafter "Lafayette Branch"). In this capacity, Ms. Gokas was responsible for day to
   day operations management and business development. Ms. Gokas was tasked with

1

supervision and scheduling of employees; client relations and services; banking

functions; budgeting and reporting; reporting to senior level bank officers; facilities

management; and community relations.

6. In 2013 and 2014 Beverly Bank experienced a management shakeup, culture changes and

a renewed focus on driving sales to boost the profitability of The Bank. For the first time

in ten (10) years during her service at the Beverly Bank, it appointed a new manager and

officer who was responsible for the management of all Bank branches and branch

managers, including Ms. Gokas.

7. In the Fall of 2014, Beverly Bank hired Gayle Fili (Hereinafter "Ms. Fili") as Branch

Administrator / Senior Vice-President. In this capacity, Ms. Fili was tasked with

oversight and management of all the branch locations and branch managers, including

Ms. Gokas.

8. Upon information and belief, Beverly Bank hired Ms. Fili, in part, to "clean house" at the

Bank by terminating, applying pressure to voluntarily resign, and/or reassign existing

employees and managers.

9. During the period of January 2010 through March 2015, the Plaintiff served as the

caretaker of her elderly and ill parents, Alphonse and Mary Gokas.

10. On or about January 14, 2015, the Plaintiff was walking to her car in the driveway of her

father's residence in Lynn and encountered black ice. The Plaintiff immediately fell to

the ground and injury resulted. The Plaintiff was diagnosed by an orthopedic surgeon

with a broken ankle. Ms. Gokas was then placed in a cast for six (6) weeks and then

followed by a walking boot for six (6) weeks.

11. As a result of her accident, the Plaintiff took excused and paid sick leave from Beverly Bank for the period of January 15, 2015 through March 2, 2015. Upon information and belief, the Plaintiff completed the required forms at Beverly bank to take leave under the Family and Medical Leave Act (Hereinafter "FMLA").

12. On or about January 15, 2015, one day after her accident, Ms. Gokas was informed by telephone that her father, Alphonse, had suffered a brain hemorrhage. The very next day on January 16, 2017, Ms. Gokas' mother, Mary, who had Alzheimer's disease, fell and injured her ribs and collapsed a lung. Both parents were admitted to intensive care at separate hospitals. While Ms. Gokas was experiencing injuries of her own, she was now dealing with serious medical emergencies and conditions involving her parents.

13. During this time, Ms. Gokas remained on sick leave and regularly updated Ms. Fili on her injury and recovery timetable by telephone.

14. On or about Monday, March 2, 2015, the Plaintiff returned from sick leave and reported ready for work, albeit while wearing a walking boot for her ankle injury. Ms. Gokas was immediately summoned by Ms. Fili to meet with her at the Cabot Street office. At this meeting, Ms. Fili abrasively raised her voice; criticized; admonished; and berated Ms. Gokas for allegedly not "calling her Assistant Manager Pauline," or words to that effect, while she was out on sick leave. Ms. Gokas immediately cried and became emotionally upset because of Ms. Fili's conduct. Ms. Fili was aware that Ms. Gokas was recovering from a physical ankle injury and that her parents were dying and, despite this knowledge, summoned Ms. Gokas to drive to the Beverly office, while in a walking boot, for the purpose of bullying, intimidating, and chastising her. These actions occurred in retaliation due to Ms. Gokas' sick leave and exercise of her rights under FMLA.

15. Ms. Fili did not request or have a human resources representative, or other neutral party attend this meeting between the parties. Upon information and belief, Ms. Fili failed to report this meeting to human resources or other top-level management at the Bank.

16. The very same day, on or about March 2, 2015 at approximately 2:00 p.m. the Plaintiff received a telephone call from her sister who informed her that her mother was being transferred to a hospice facility located in Danvers. Ms. Gokas learned that the death of her mother was imminent. The next day the Plaintiff was informed that the death of her father was imminent. The Plaintiff reported this situation to Ms. Fili and Ms. Pauline Bloomer, the branch assistant manager, and then checked out of work for the day.

17. On March 6, 2015, and on March 8, 2015, the Plaintiff had lost both her parents within a span of two (2) days. As a result of the loss of her parents, Ms. Gokas experienced significant grief.

18. Ms. Gokas took sick leave from the Bank due to the death of her parents in quick succession for the period of March 3, 2016 through March 15, 2016.

19. On or about Monday, March 16, 2015, the Plaintiff returned to work at the Lafayette Street branch. Ms. Gokas was still experiencing tremendous grief from the loss of her parents.

20. During the first week of her return to work after an extended absence in the months of January, February and March 2015, Ms. Gokas was advised by three bank employees to "watch her back" or words to that effect.

21. On April 9, 2015, Ms. Gokas continued to experience significant grief due to the loss of her parents and, on this day, was in a state of despair, had difficulty concentrating, felt sadness and was focused on trying to "get through the workday."

22. Following a management meeting at the Cabot Street offices of the Bank, Ms. Fili called Ms. Gokas to her upstairs office to discuss the issues and conflict with Ms. Gokas' assistant manager, Ms. Bloomer.

23. Upon information and belief, Ms. Fili set up a confrontation between Ms. Gokas and Ms. Bloomer.

24. Ms. Fili then insisted that all parties, including Ms. Gokas, Ms. Bloomer, and Ms. Fili, immediately conduct an in-person meeting to reconcile any differences, and "hash it out" as stated by Ms. Fili.

25. Ms. Fili began the meeting by stating that there were "issues" to be resolved between Ms. Gokas and Ms. Bloomer, and that she desired to "take a different approach" and "if you need to yell, scream or whatever you need to do to work this out." The meeting then continued, which quickly resulted in a meeting where both Ms. Fili and Ms. Bloomer were screaming, insulting, threatening, and intimidating Ms. Gokas. Ms. Fili screamed several disparaging statements that were heard by other employees and customers at the Lafayette Street Branch, such as you are a "terrible leader" and you have "terrible management skills" and other personal attacks and insults all while Ms. Bloomer smiled and expressed her approval of each statement.

26. At the conclusion of this meeting, Ms. Gokas left this meeting traumatized, shocked, humiliated and extremely upset. The confrontation was orchestrated by Ms. Fili to retaliating against Ms. Gokas for her exercise of her FMLA rights.

27. On or about June 1, 2015, the Plaintiff received a negative employment action due to her sick leave and exercise of FMLA rights. The Plaintiff received a written disciplinary warning by Ms. Fili based on her inability to meet quarterly sales goals. The Plaintiff

verbally protested the warning since it was illogical given her excused absence from
work due to her ankle injury and the death of close family members. Ms. Gokas
expressed her belief that the disciplinary warning was unduly harsh since she had missed
nearly two months of work and was being evaluated for sales goals while she was unable
due to her ankle injury to sell bank products.

28. On or about August 31, 2015, the Plaintiff was terminated from her employment at
Beverly Bank.

29. Immediately following her termination on August 31, 2015, the toxic workplace
established by the Defendants (involving humiliation, hostility, threats, insults, and/or
otherwise making her job impossible to perform) reached its apex, and Ms. Gokas
became extremely distraught and inconsolable, and then severely injured herself by
overdosing on two different types of prescription medication.

30. Ms. Gokas was subsequently rescued and admitted to the hospital for medical and mental
treatment for an extended period, followed by an extended outpatient treatment.

## CAUSES OF ACTION

### COUNT I
### RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. s. 2615

31. The Plaintiff incorporates by reference Paragraphs 1 - 30.

32. The Plaintiff availed herself to her rights under the Family and Medical Leave Act.

33. The Defendant interfered with and retaliated against the Plaintiff for having exercised her
FMLA rights.  The acts and occurrences described in Paragraphs were in retaliation for
Ms. Gokas use of sick leave under FMLA.

34. There is a causal connection between the Defendant's employment action and the exercise of the Plaintiff's FMLA rights, which was a negative factor in her disciplinary actions and eventual termination.

35. As a result of the Defendant's interference and retaliation against the Plaintiff for her exercise of her FMLA rights, she has suffered damages.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, Diane Gokas, requests that this Honorable Court enter judgment as follows:

36. Award the Plaintiff damages to be determined at trial;

37. Award the Plaintiff reasonable legal fees and costs of this action;

38. Enter any other relief in favor of the Plaintiff that this Court deems just and proper.

### JURY DEMAND

The Plaintiff herein demands a trial by jury.

Respectfully submitted,

The Plaintiff
Diane Gokas

By her Attorneys:

December 16, 2019

Stefan E. Cencarik, Esq. (BBO #666766)
Northshore Legal LLC
210 Broadway, Suite 202
Lynnfield, MA 01940
Tel: 781-463-6063
Fax: 781-463-6067
stefan@northshore.legal